*243 DISCIPLINARY PROCEEDINGS
MARCUS, Justice.*
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted a proceeding against Norman Haymer, a member of said association. The committee previously investigated respondent’s alleged misconduct in accordance with Article 15, Section 3 of the association’s articles of incorporation. Notice of the proceedings which involved seven specifications of misconduct was sent to respondent. On April 28, 1988, this court appointed Ms. Doris Faulkenheiner as curator ad hoc to represent respondent.[1]
The committee held a formal investigative hearing on the seven specifications on October 19, 1988 in accord with Article 15,' Section 3(b) of the association’s articles of incorporation. Respondent was not present at this hearing, but was represented by the curator, Ms. Faulkenheiner. Based on the evidence presented at the formal investigative hearing, the committee was of the unanimous opinion that respondent had been guilty of a violation of the laws of this state relating to the professional conduct of lawyers and to the moral fitness for the practice of law; specifically, the committee found that respondent was guilty of the misconduct described in the seven specifications.
On January 25, 1989, the committee filed a petition in this court for disciplinary action against respondent under Article 15, Section 4(c) of the association’s articles of incorporation. The curator filed an answer with a general denial on behalf of respondent. The court, by order, appointed John David Zoiber as commissioner to take evidence and file a report with this court setting forth his findings of fact and conclusions of law. Louisiana State Bar Association Articles of Incorporation, Article 15, Sections 6(b) and (d).
A hearing before the commissioner was held on July 11, 1989. Respondent did not attend this hearing, but was represented by his curator. The committee introduced into evidence the entire record of the earlier investigative hearing, including a transcript of testimony taken at that hearing and exhibits. The committee also presented the testimony of several other witnesses at the hearing before the commissioner. Thereafter, on September 29, 1989, the commissioner filed with this court his written report wherein he stated his findings of fact and conclusions of law, and recommended disbarment as an appropriate sanction for respondent’s actions. The committee concurred with the commissioner’s findings of fact and conclusions of law. In brief to this court, the committee recommended disbarment as the appropriate discipline.
The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Kilgarlin, 550 So.2d 600 (La.1989). The committee made the following seven specifications of misconduct against respondent.
SPECIFICATION NO. 1
The first specification of misconduct concerns respondent’s neglect of a legal matter entrusted to him by his client, Ms. Rose Mae Franklin. The specification accuses respondent of neglecting a legal matter entrusted to him, failing to communicate with his client, and failing to return his client’s file in violation of DR 1-102, DR 6-101(A)(3), Rule 1.1, Rule 1.3, Rule 1.4, *244 Rule 1.16 and Rule 8.4,[2] and failing to carry out an employment contract to the prejudice of his client in violation of DR 7-101(A)(2) and (3).[3]
The only witness testifying at the commissioner’s hearing regarding this specification was Ms. Rose Mae Franklin. She testified that she hired respondent to represent her in connection with a personal injury claim that arose from a slip and fall accident in a grocery store. Respondent agreed to represent her but failed to file suit within the prescriptive period. Respondent did not respond to Ms. Franklin’s inquiries about the case. On one occasion, respondent’s secretary told Ms. Franklin that respondent had gone downtown to file suit for her. Respondent failed to return Ms. Franklin’s file despite numerous requests. When she learned that respondent had not filed the suit for her and had moved out of town, Ms. Franklin sent letters of complaint written by friends on her behalf to the committee.
We agree with the commissioner that respondent violated DR 6-101(A)(3) and DR 7-101(A)(2) and (3) of the Code of Professional Responsibility by failing to communicate with his client, failing to return his client’s file, and failing to carry out an employment contract to the prejudice of his client. We also agree that respondent violated DR 1-102.
SPECIFICATION NO. 2
The second specification concerns respondent’s handling of settlement funds belonging to his client, Ms. Kitty Ruth. The specification alleges that respondent obtained a draft from an insurer in settlement of Ms. Ruth’s personal injury claim arising from an automobile accident; it also alleges that respondent commingled and converted Ms. Ruth’s funds to his own use, and has not furnished any portion of the funds to Ms. Ruth despite repeated requests, in violation of DR 1-102, DR 6-101(A)(3), DR 9-102, and Rule 1.15.[4]
*245 The witness testifying at the investigative hearing about this specification was Mr. Warren Ponder, an attorney hired by Ms. Kitty Ruth to recover her portion of the settlement funds from respondent. Mr. Ponder testified that Ms. Ruth hired respondent to represent her in a personal injury claim arising from an automobile accident that occurred in November 1985. Respondent obtained a settlement of $12,-000.00 from National County Mutual Insurance Company. Ms. Ruth signed releases and endorsed the draft dated July 10, 1986, and was told to wait about two weeks to receive her share of the settlement. Ms. Ruth has been unsuccessful in trying to obtain her portion of the settlement funds, approximately $8,000.00, from respondent. A copy of the original draft was sent to the committee by the insurer, and was entered into evidence.
The commissioner found that respondent was guilty of the misconduct listed in the second specification. Respondent obtained a draft in the amount of $12,000.00 in settlement of his client’s claim, negotiated it, and retained the funds. He has not given his client her portion of the settlement funds ($8,000.00). We agree with the commissioner that the respondent commingled and converted his client’s funds in violation of DR 9-102. We also agree that respondent violated DR 1-102 and DR 6-101(A)(3).
SPECIFICATION NO. 3
The third specification of misconduct concerns the respondent’s handling of settlement funds belonging to Ms. Barbara O’Conner, a seventy-one year old woman with a fifth grade education. This specification alleges respondent negotiated a settlement of his client’s claim, received a draft in the amount of $10,000.00, and commingled and converted the funds to his own use in violation of DR 1-102, DR 6-101(A)(3), DR 9-102 and Rule 1.15.[5] Further the specification alleges respondent issued a check to his client in the amount of $7,390.00 which was returned by the bank marked “Non Sufficient Funds.” To date respondent has failed to furnish his client with her portion of the settlement funds, amounting to approximately $7,390.00.
The only witness who testified at the investigative hearing in connection with this specification was Ms. Barbara O’Conner. She testified that she hired respondent to handle a personal injury claim arising out of an automobile accident. Respondent negotiated a settlement for $10,000.00 with Granite State Insurance Company on behalf of Ms. O’Conner. Ms. O’Conner signed a release and endorsed a draft dated June 9, 1986, in the amount of $10,000.00. He issued a check to her for her portion of the settlement proceeds, in the amount of $7,390.00; the check was returned by the bank because there were insufficient funds in respondent’s account. Ms. O’Conner hired another attorney, L.D. Sledge, to assist her in recovering the settlement proceeds from respondent. Ms. O’Conner has not received her portion of the settlement proceeds ($7,390.00) from respondent. Copies of the draft and release signed by Ms. O’Conner were entered into evidence.
The commissioner found that respondent was guilty of the misconduct listed in the third specification. Respondent obtained a draft in the amount of $10,000.00 in settlement of his client’s claim, and negotiated it. Although he issued a check in the amount of $7,390.00 to his client for her portion of the funds, it was returned by the bank because there were insufficient funds in respondent’s account. Respondent has not returned his client’s portion of the funds *246 ($7,390.00). We agree with the commissioner that respondent commingled and converted his client's funds to his own use in violation of DR 9-102. We also agree that respondent violated DR 1-102 and DR 6-101(A)(3).
SPECIFICATION NO. 4
The fourth specification of misconduct concerns respondent’s mishandling of settlement funds belonging to a client, Christine L. Chapman, the minor daughter of Ms. Rose Chapman. The specification alleges that respondent settled his client’s claim for $3,450.00, negotiated the draft in that amount, and commingled and converted his client’s funds in violation of DR 1-102, DR 6-101(A)(3), DR 9-102 and Rule 1.15.[6]
The only witness who testified at the commissioner’s hearing in connection with this specification was Ms. Rose Chapman. She testified that in September 1985, she hired respondent to handle a personal injury claim on behalf of her minor daughter arising out of a slip and fall accident in a department store. She stated that respondent settled the claim for $3,450.00, and that respondent was to receive a one-third contingency fee. She signed the release and draft, and appeared before a judge in connection with the settlement. Respondent negotiated the draft and told Ms. Chapman that she would receive her daughter’s portion of the settlement funds ($2,335.00) in about ten days. Respondent subsequently failed to give his client her portion of the settlement funds. Ms. Chapman has been unable to contact respondent, and has not received her daughter’s portion of the settlement funds.
The commissioner concluded that respondent was guilty of the misconduct listed in the fourth specification. Respondent obtained a draft in the amount of $3,450.00 in settlement of his client’s claim, negotiated it and retained the funds. He has not given his client her portion of the funds ($2,335.00). We agree with the commissioner that respondent commingled and converted his client’s funds in violation of DR 9-102. We also agree that respondent violated DR 1-102 and DR 6-101(A)(3).
SPECIFICATION NO. 5
The fifth specification alleges respondent neglected a legal matter entrusted to him by his clients, Maude and Chelis Cain, failed to communicate with his clients, and failed to carry out a contract of employment to the prejudice of his clients in violation of DR 1-102, DR 6-101(A)(3), and DR 7-101(A)(2) and (3), Rule 1.1, Rule 1.3, Rule 1.4 and Rule 8.4.[7]
The only witness testifying at the investigative hearing on this specification was Mr. Chelis Cain. Mr. and Mrs. Cain hired respondent in January 1985 to handle a worker’s compensation claim for Mrs. Cain, and later hired respondent to handle a personal injury claim for them arising from an automobile accident that occurred on December 5,1985. Initially respondent obtained some worker’s compensation benefits for Mrs. Cain. However, her employer stopped the payments. After that time, Mr. Cain testified that they could not reach respondent. He did not know whether respondent filed suit in either matter on their behalf. He also testified that they had substantial medical expenses and that neither of them have been able to work since the accident. Mr. and Mrs. Cain subsequently hired another attorney, Mr. Marion Weaver, to handle these claims.
The commissioner found that respondent was guilty of the misconduct alleged in the *247 fifth specification. We agree with the commissioner that respondent neglected the legal matters entrusted to him, failed to communicate with his clients, and failed to carry out the employment contract to the prejudice of his clients in violation of DR 6-101(A)(3) and DR 7-101(A)(2) and (3). We also agree that respondent violated DR 1-102.
SPECIFICATION NO. 6
The sixth specification alleges that respondent neglected a legal matter entrusted to him by his client, Mr. Ronald Pattan, failed to communicate with his client, failed to carry out a contract of employment to the prejudice of his client, and failed to return his client’s file in violation of DR 1-102, DR 6-101(A)(3), DR 7-101(A)(2) and (3), Rule 1.1, Rule 1.3, Rule 1.4, Rule 1.16 and Rule 8.4.[8]
The only witness testifying at the investigative hearing on this specification was Mr. Ronald Pattan. He stated that he hired respondent to handle a worker’s compensation claim. Respondent filed suit on his behalf in February 1985 and deposed a physician in connection with the claim. After that time, respondent failed to communicate with Mr. Pattan despite numerous requests for information. Mr. Pattan discharged respondent in August 1986 and hired another attorney, Mr. Daniel Avant, to handle the matter. Neither Mr. Pattan nor Mr. Avant have been successful in attempting to recover the file from respondent.
The commissioner found that respondent was guilty of the misconduct alleged in the sixth specification. We agree with the commissioner that respondent neglected the legal matter entrusted to him by his client, failed to communicate with his client, failed to carry out a contract of employment to the prejudice of his client, and failed to return his client's file in violation of DR 6-101(A)(3) and DR 7-101(A)(2) and (3). We also agree that respondent violated DR 1-102.
SPECIFICATION NO. 7
The seventh specification alleges that respondent failed to respond to the committee’s correspondence and failed to cooperate with the committee during the investigation and disciplinary proceedings in violation of DR 1-102(A)(1), (4), (5) and (6) and Rule 8.4.[9] The committee repeatedly sent letters and copies of the specifications of misconduct to respondent’s last known address. The curator also sent numerous letters to respondent, and met with respondent on November 4, 1988, at which time she gave him copies of all pertinent documents including the specifications of misconduct. Respondent sent a letter dated April 2, 1987 to the committee in which he requested a thirty day extension to respond to the allegations. Respondent failed to submit any response to the specifications, and failed to appear at either hearing. We agree with the commissioner that respondent failed to cooperate with the committee in violation of Rule 8.4(g).
DISCIPLINE
Based on the aforesaid findings of misconduct, we consider that disciplinary *248 action is warranted. The purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the Code of Professional Responsibility and the Rules of Professional Conduct. The discipline to be imposed depends upon the seriousness of the offense involved and the facts and circumstances of each case. The court will take aggravating and mitigating circumstances into account. Louisiana State Bar Association v. Pasquier, 545 So.2d 1014 (La. 1989).
Respondent commingled and converted settlement proceeds belonging to Ms. Kitty Ruth in the amount of $8,000.00, to Ms. Rose Chapman in the amount of $7,390.00, and to Ms. Barbara O’Conner in the amount of $2,335.00. Respondent has made no restitution to any of these clients. He also neglected legal matters and failed to carry out employment contracts entered into with four other clients, Mrs. Rose Mae Franklin, Mr. and Mrs. Chelis Cain, and Mr. Ronald Pattan. He also failed to communicate with his clients in three cases, and failed to return the clients’ files in two cases. Respondent also failed to cooperate with the committee in its investigation and disciplinary proceedings. Further, respondent has substantial experience in the practice of law, having been admitted to the Louisiana State Bar Association in 1976. In mitigation, respondent alleged in his letter of April 2, 1987 that he had been hospitalized for treatment of alcoholism; however, he presented no evidence to support this assertion.
Taking into account the aggravating and mitigating factors, we consider that respondent should be disbarred from the practice of law. Respondent must make restitution to his clients before he will be considered for readmission.
DECREE
For the reasons assigned, it is ordered, adjudged, and decreed that the name of Norman Haymer be stricken from the roll of attorneys and his license to practice law in Louisiana be cancelled. Respondent must make full restitution of the amounts owed to his clients before he will be considered for readmission. Respondent is to bear all costs of these proceedings.

 Judge Melvin A. Shortess of the First Circuit Court of Appeal participated in this decision as Associate Justice Pro Tempore.

. The committee sent nine letters to respondent’s last known address on February 26, April 11, August 29, October 14, and November 6, 1986, February 25, and May 29, 1987 and January 11, 1988. However, all letters were returned unclaimed. On April 2, 1987, respondent wrote to the committee requesting an extension of time within which to respond, and indicating that he had alcohol problems. The curator made numerous attempts to contact respondent, including publishing newspaper advertisements and writing letters to respondent and his former associate. On November 4, 1988, respondent went to the curator’s office to discuss the complaints and received copies of all documents, pleadings and exhibits including the complaints and the specifications of misconduct. We consider that respondent received adequate notice of the disciplinary proceedings against him.

. DR 1-102(A) provides:
A lawyer shall not:
(1) Violate a Disciplinary Rule.
(2) Circumvent a Disciplinary Rule through actions of another.
(3) Engage in illegal conduct involving moral turpitude.
(4) Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation.
(5) Engage in conduct that is prejudicial to the administration of justice.
(6) Engage in any other conduct that adversely reflects on his fitness to practice law. DR 6 — 101(A)(3) provides:
A lawyer shall not:
(3) Neglect a legal matter entrusted to him. Ms. Franklin's letters of complaint to the committee concerning respondent's prior misconduct were received on February 10, 1986, and December 19, 1986. On January 1, 1987, the Rules of Professional Conduct became effective and replaced the Code of Professional Responsibility. Respondent’s alleged misconduct occurred before January 1, 1987. Therefore, the new disciplinary rules do not apply here.

. DR 7 — 101(A)(2) and (3) provide:
A lawyer shall not intentionally:
(2) Fail to carry out a contract of employment entered into with a client for professional services, but he may withdraw as permitted under DR 2-110, DR 5-102, and DR 5-105.
(3) Prejudice or damage his client during the course of the professional relationship, except as required under DR 7-102(B).

.DR 1-102, supra note 2.
DR 6-101 (A)(3), supra note 2.
DR 9-102 provides:
(A) All funds of clients paid to a lawyer or law firm, other than advances for costs and expenses, shall be deposited in one or more identifiable bank accounts maintained in the state in which the law office is situated and no funds belonging to the lawyer or law firm shall be deposited therein except as follows:
(1) Funds reasonably sufficient to pay bank charges may be deposited therein.
(2) Funds belonging in part to a client and in part presently or potentially to the lawyer or law firm must be deposited therein, but the portion belonging to the lawyer or law firm may be withdrawn when due unless the right of the lawyer or law firm to receive it is disputed by the client, in which event the disputed portion shall not be withdrawn until the dispute is finally resolved.
(B) A lawyer shall:
(1) Promptly notify a client of the receipt of his funds, securities, or other properties.
(2) Identify and label securities and properties of a client promptly upon receipt and place them in a safe deposit box or other place of safekeeping as soon as practicable.
(3) Maintain complete records of all funds, securities, and other properties of a client coming into the possession of the lawyer and render appropriate accounts to his client regarding them.
(4) Promptly pay or deliver to the client as requested by a client the funds, securities, or *245 other properties in the possession of the lawyer which the client is entitled to receive. On January 1, 1987, the Rules of Professional Conduct became effective and replaced the Code of Professional Responsibility. Respondent’s alleged misconduct occurred before January 1, 1987. Therefore, the new disciplinary rules do not apply here.

. DR 1-102, supra note 2.
DR 6-101(A)(3), supra note 2.
DR 9-102, supra note 4.
On January 1, 1987, the Rules of Professional Conduct became effective and replaced the Code of Professional Responsibility. Respondent’s alleged misconduct occurred before January 1, 1987. Therefore, the new disciplinary rules do not apply here.

. DR 1-102, supra note 2.
DR 6-101(A)(3), supra note 2.
DR 9-102, supra note 4.
On January 1, 1987, the Rules of Professional Conduct became effective and replaced the Code of Professional Responsibility. Respondent's alleged misconduct occurred before January 1, 1987. Therefore, the new disciplinary rules do not apply here.

. DR 1-102, supra note 2.
DR 6 — 101(A)(3), supra note 2.
DR 7 — 101(A)(2) and (3), supra note 3.
On January 1, 1987, the Rules of Professional Conduct became effective and replaced the Code of Professional Responsibility. Respondent’s alleged misconduct occurred before January 1, 1987. Therefore, the new disciplinary rules do not apply here.

. DR 1-102, supra note 2.
DR 6-101(A)(3), supra note 2.
DR 7-101(A)(2) and (3), supra note 3.
On January 1, 1987, the Rules of Professional Conduct became effective and replaced the Code of Professional Responsibility. Respondent’s alleged misconduct occurred before January 1, 1987. Therefore, the new disciplinary rules do not apply here.

. DR 1-102, supra note 2.
Rule 8.4(g) provides in pertinent part:
It is professional misconduct for a lawyer to:
(g) Except upon the expressed assertion of a constitutional privilege, to fail to cooperate with the Committee on Professional Responsibility in its investigation of alleged misconduct.
On April 2, 1987, respondent wrote to the committee requesting an extension of time within which to respond. On November 4, 1988, respondent went to the curator's office to discuss the complaints and received copies of all documents, pleadings and exhibits, including the complaints and the specifications of misconduct. On January 1, 1987, the Rules of Professional Conduct became effective and replaced the Code of Professional Responsibility. Respondent’s alleged misconduct occurred after January 1, 1987. Therefore, the old disciplinary rules do not apply here.