DISCIPLINARY PROCEEDINGS
MARCUS, Justice.
The Louisiana State Bar Association, through its Committee on Professional Responsibility, instituted disciplinary proceedings against Joseph B. Amberg, Jr., a member of said association. The committee previously investigated respondent’s alleged misconduct in accordance with article 15, section 3 of the articles of incorporation of the association. Notice of the first proceeding, No. 8452 (the Sevin matter), which involved two specifications of misconduct, was sent to respondent by certified mail on September 4, 1987. Notice of the second proceeding, Nos. 8647, 8825, and 8727 (the Fleet Finance matter, the Donaldson matter and the Franklin matter respectively), which involved four specifications of misconduct, was sent to respondent by certified mail on February 12, 1988. Notice of the third proceeding, No. 9101 (the Betz matter), which involved three specifications of misconduct, was sent to respondent by certified mail on September 14, 1988.
The committee held a formal investigatory hearing on the specifications as set forth in the Sevin matter on September 28, 1987; on the specifications as set forth in the Fleet Finance, Donaldson and Franklin matters on March 15, 1988; and on the specifications as set forth in the Betz matter on October 10, 1988. Respondent was present, represented himself, and testified on his own behalf at all three hearings. Based upon the evidence adduced at the hearings, the committee by unanimous vote was of the opinion that respondent had been guilty of a violation of the laws of this state relating to the professional conduct of lawyers and to the moral fitness for the practice of law; that, specifically, respondent was guilty of the conduct as set forth in the specifications in all three proceedings.
Suits for disciplinary action against respondent under the provisions of article 15, section 4(c) of the articles of incorporation were instituted.[1] The court, by separate *1094 orders, appointed James G. Derbes in 88-B-1310 and Harold J. Lamy in 89-B-0421 and 89-B-0422 as commissioners to take evidence and file reports with this court setting forth their findings of fact and conclusions of law. Louisiana State Bar Association, article 15, section 6(b) and (d).
A hearing before Mr. Derbes was held in 88-B-1310 on January 24, 1989. Respondent was present, represented himself, and testified on his own behalf. The committee introduced into evidence the entire record of the earlier investigatory hearing. The hearing was continued until March 10, 1989, to give respondent an opportunity to produce additional documents. Additional documents were introduced by respondent on that date. Thereafter, on September 13, 1990, the commissioner filed with this court his written report wherein he stated his findings of fact and conclusions of law, and recommended a one year suspension from the practice of law if the violations charged were the first for which disciplinary action against respondent had been sought, and a two year suspension if respondent had committed any other violations of a serious nature for which a suspension had been recommended prior to the filing of the report. The disciplinary board[2] concurred in the commissioner's findings of fact and conclusions of law but opposed the commissioner’s recommendation as to discipline.
A hearing before Mr. Lamy was held in 88-B-0421 and 88-B-0422 on December 14, 1989. Respondent was present and represented himself. The committee introduced into evidence the entire record of the earlier investigatory hearing and rested its case. Respondent requested and was granted permission to make a written statement supporting his position. Thereafter, on June 12 and July 12, 1990, the commissioner filed with this court his written reports wherein he stated his findings of fact and conclusions of law. The written statement of respondent was attached to the report. The commissioner recommended a six month suspension from the practice of law and return of all costs to the respective complainants. The disciplinary board concurred in the commissioner’s findings of fact and conclusions of law but opposed the commissioner’s recommendation as to discipline. Upon motion of the disciplinary board, the three proceedings were consolidated for oral argument before this court. In brief to this court, the disciplinary board recommended disbarment as the appropriate discipline. After argument before this court, the matters were submitted for our determination on the records before the commissioners.
The bar association has the burden of establishing by clear and convincing evidence that respondent was guilty of the alleged specifications of misconduct. Louisiana State Bar Association v. Haymer, 563 So.2d 242 (La.1990).
The three consolidated proceedings present nine specifications of misconduct involving five separate matters.

Proceeding 88-B-1310 (The Sevin Matter)

This proceeding arises out of respondent’s representation of Mr. and Mrs. Sevin in the settlement of their personal injury lawsuit. The first specification alleges that respondent failed to pay medical expenses, or if he did pay them, he neglected to furnish documentary evidence of payment in violation of DR 1-102 (lawyer misconduct), DR 6-101(A)(3) (neglect of a legal matter), and DR 9-102(B)(3) (maintenance of records and accounting to client), and that he commingled and converted settlement funds to his own use in violation of DR 1-102 and DR 9-102(A), (B) (preserving identity of funds and property of a client). The second specification alleges that respondent failed to cooperate with the committee in violation of DR 1-102(A)(1), (4), (5), (6) and Rule 8.4 (lawyer misconduct).[3]
*1095 Mr. and Mrs. Sevin testified at the investigatory hearing that they both signed a contingent fee contract with respondent on September 15, 1984. The contract provided that respondent would receive one third of whatever was collected if the claims were settled without the necessity of filing suit and forty percent in the event it was necessary to file suit in the matter. Mr. and Mrs. Sevin were provided with medical services, some at the referral of respondent. A lawsuit was filed by respondent. The claim of Mr. Sevin was resolved first for the sum of $31,500. The settlement check was deposited into respondent’s trust account on August 16, 1985. According to the settlement document, medical expenses totalling $2,159.83 and “attorney fees of 40% of gross or $12,600 reduced by agreement to 33⅛% of $30,000 ($10,000)” were deducted from the settlement together with other costs leaving a net amount for Mr. Sevin of $18,000. Respondent’s bank statement for August, 1985, indicated that a check for $18,000 was disbursed to Mr. Sevin on August 23, 1985. About a month later, on September 30, 1985, Mrs. Sevin’s claim was settled for $65,000. In her claim, medical expenses of $10,035.95 and ‘•‘attorney fees of 40% of gross or $26,000 reduced by agreement to 33⅛% of $65,000 ($18,321.55)”[4] were deducted together with other costs with a net sum allocated to Mrs. Sevin of $36,513.40. Respondent’s trust account showed that a check in that amount was issued to Mrs. Sevin on October 7, 1985, and a check for respondent’s attorney fees of $18)321.55 was paid to him out of the same account.
Respondent paid some of the medical expenses between October 1, 1985, and August 8, 1986, leaving a balance of $2,068.43 in unpaid medical bills.[5] Respondent’s trust account statements show that at times the trust account balance was below the amount outstanding in medical expenses for the Sevins, said amount having been placed in the trust account by respondent for payment of the medical expenses.[6] Despite several opportunities presented to respondent by the committee and the commissioner, respondent failed to present satisfactory evidence of payment of the outstanding medical expenses of $2,068.43.
Respondent urged that when he settled Mr. Sevin’s claim, he agreed to reduce his fee from forty percent to one-third. When he settled Mrs. Sevin’s claim, Mr. Sevin asked him to reduce his fee to one-third in her case. Respondent testified that he did not agree to reduce his fee; however, at the insistence of Mr. Sevin, he did verbally agree to allow Mr. Sevin to “negotiate” the total outstanding medical bills on both claims ($12,195.78) out of his net settlement. Respondent would then reimburse Mr. Sevin for the amount of the negotiated medical bills out of the sum retained by him for that purpose and split the amount saved with Mr. Sevin. However, according to the testimony of respondent, the Sevins left town before the settlement document could be changed, and Mr. Sevin never negotiated the medical bills. Instead, a few months later, Mr. Sevin called respondent asking him why the medical bills had not been paid, and eventually the complaint upon which this proceeding is based was initiated. Mr. Sevin testified that respondent’s fee was to be one-third if they did not go to trial and he denied the existence of any agreement by him to negotiate the medical bills. Mrs. Sevin’s testimony was substantially the same as that of her husband.-
The commissioner concluded that “respondent’s version of the facts does not *1096 square with the documentary evidence, nor is it logical or consistent.” We agree. Respondent has failed to provide evidence of payment of $2,068.43 in medical bills despite the fact that the commissioner’s hearing was continued to give him the opportunity to present such evidence. Respondent has failed to refute the fact that his trust account at the end of 1985 and the beginning of 1986 fell below the amount that was outstanding in medical bills.[7] We agree with the commissioner .that respondent has violated the disciplinary rules and the rule of professional conduct set forth in the two specifications of misconduct in this proceeding.

Proceeding 89-B-0421 (The Betz Matter)

This proceeding concerns respondent’s handling of a divorce and a malpractice matter for his client, Mrs. Pauline Betz. The first specification of misconduct alleges that respondent neglected to perform the necessary services to complete the divorce matter and to furnish any refund to the client in violation of DR 1-102(A) (lawyer misconduct), DR 6-101(A)(3) (neglect of a legal matter), DR 7-101(A)(2), (3) (zealous representation) and Rule 8.4 (lawyer misconduct), Rule 1.1 (lawyer competency), Rule 1.3 (lawyer diligence), Rule 1.4 (lawyer communication with client) and Rule 1.16 (declining or terminating representation). The second specification of misconduct alleges that respondent neglected to communicate with his client and to perform the necessary-services on behalf of her in the malpractice matter in violation of DR 1-102(A), DR 6-101(A)(3), DR 7-101(A)(2), (3), and Rules 8.4, 1.1, 1.3, and 1.4. The third specification of misconduct alleges that respondent failed to cooperate with the committee in violation of Rule 8.4(g).[8]
Mrs. Betz testified at the investigatory hearing that she gave respondent $350 to file and secure a divorce from her husband. She also signed an employment contract with respondent to bring a medical malpractice action against the physician who treated her prior to the loss of her unborn child. Although respondent did file suit for divorce in March of 1986, and Mrs. Betz and a witness went to court to secure the divorce, because of an irregularity in service on the husband, the divorce was not completed. Mrs. Betz left town shortly thereafter. She testified that she attempted to reach respondent by phone and by mail and she left her daughter’s address in New Orleans with respondent, but she never heard from him and still did not know at the time of the investigatory hearing whether her divorce was complete. In the malpractice matter, Mrs. Betz signed a contingent fee contract on July 17, 1985. Thereafter, she attempted to follow up with respondent regarding the status of her case. Although at times she did reach respondent’s secretary, respondent never returned her calls. Finally, Mrs. Betz wrote to the bar association and lodged this complaint.
Respondent testified that he intended to complete the divorce matter but he was unable to contact Mrs. Betz because she moved to Florida and did not leave a forwarding address. When Mrs. Betz did telephone his office it was to find out the status of the malpractice claim and she failed to leave a telephone number or address at which she could be reached. Respondent testified that he presented the malpractice claim to a medical review panel and the claim was dismissed in May of 1987. He could not get in touch with Mrs. Betz to inform her of the panel decision and to determine if she wanted to pursue the claim in court.
We agree with the commissioner that respondent was guilty of failing to communicate with his client and keep her aware of *1097 the progress of her cases and failing to use due diligence in handling the matters entrusted to him. Moreover, we agree with the commissioner that respondent failed to cooperate with the committee. Hence, we find that respondent has violated the disciplinary rules and rules of professional conduct set forth in the specifications of misconduct above.

Proceeding 89-B-0422 (The Fleet Finance, Donaldson and Franklin Matters)

This proceeding involved three clients in three separate matters. The first three specifications of misconduct allege that respondent neglected to perform legal services on behalf of each client, neglected to issue a refund of retainers in the Fleet Finance and Donaldson matters and refused to communicate with each client and to furnish the clients with their files in violation of DR 1-102(A) (lawyer misconduct), DR 6-101(A)(3) (neglect of a legal matter), DR 7-101(A)(2), (3) (zealous representation) and Rule 8.4 (lawyer misconduct), Rule 1.1 (lawyer competency), Rule 1.3 (lawyer diligence) and Rule 1.4 (lawyer communication with client) in all three matters and Rule 1.16 (declining or terminating representation) in the Fleet Finance and Franklin matters. The fourth specification of misconduct alleges that respondent refused to cooperate with the committee in all three matters in violation of DR 1-102(A)(1), (4), (5), (6) and Rule 8.4.[9]

The Fleet Finance Matter

In the Fleet Finance matter, Mr. John Adams, the assistant collection manager for Fleet Finance, testified that he hired respondent in a collection matter in March of 1986 and paid him a $265 retainer. After not getting a response and after numerous attempts to contact respondent by phone, in June of 1986, Mr. Adams wrote a letter to the bar association requesting the return of the file and the $265 retainer. At the time of the investigatory hearing, the $265 had not been refunded. Respondent testified that he did not personally do collection work but another attorney in his office would have handled the file. When respondent was contacted by the bar association regarding the initial complaint, he responded by phone that he did not have a client by the name of John Adams and only later in the investigatory process with the committee did he realize that his file was under the name of All State Credit Plan or Credico (Credico having purchased Fleet Finance and All State Credit Plan). According to respondent’s letter of December 18, 1989, to the commissioner, the retainer of $265 has been returned to Fleet Finance.

The Donaldson Matter

Mrs. Donaldson testified that in 1983 she met with respondent concerning an injury she incurred while on the premises at Hazel Park School. Mrs. Donaldson paid respondent $110 in February of 1984 and he filed suit against Jefferson Parish instead of the Jefferson Parish School Board and the case was dismissed against the parish on an exception. Mrs. Donaldson testified that she was unaware that her suit had been dismissed and that she called respondent approximately every two or three weeks about the status of her case but he never returned her calls. She filed a complaint with the committee in December of 1986. Respondent testified that he attempted to settle the claim with an attorney for the school board but the attorney refused to settle because he found the claim to be without merit. Respondent admitted that the suit was filed and dismissed on an exception and that he never informed Mrs. Donaldson of the dismissal.

The Franklin Matter

Mrs. Franklin testified that she hired respondent in May of 1984 to handle a malpractice case for her on a contingent fee basis. She filled out an information sheet and told respondent’s secretary that she *1098 could not pay the $50 consultation fee. She testified that after reviewing her records, respondent told her that he would take the case and obtain a doctor and a nurse to review her medical records and Mrs. Franklin was to call him back in two weeks. She repeatedly called him but could not reach him personally. Some of the calls were answered by his secretary and some by an answering machine. According to Mrs. Franklin’s testimony, respondent finally returned her call and told her that proceedings were filed and he was waiting for a medical review panel to be convened. She subsequently called the insurance commissioner’s office and found no record of her case being filed. She hired an attorney to pursue a malpractice claim against respondent and to retrieve her file which she testified respondent would not return to her. Mrs. Franklin then wrote a complaint to the bar association. Respondent testified that he would not sign a contract with Mrs. Franklin and take her case until she came up with some advance money to hire medical personnel to review her records. He told Mrs. Franklin to get another lawyer to handle her case. The next thing he knew he was the subject of a potential malpractice claim. Respondent also testified that he told Mrs. Franklin on more than one occasion to pick up her papers and sign a release for them which she never did.
The bar association complained that respondent failed to cooperate with the committee in all three matters. Respondent admitted that he never responded to the committee despite repeated requests and despite his promises to respond. He explained that he was overwhelmed by emotional and personal problems he was experiencing including a divorce, a fire at his office, and an attempt by his ex-wife to commit suicide.
The commissioner found that the cumulative testimony of the witnesses in the three matters had the effect of establishing a neglect and disregard by respondent of his legal responsibilities. The commissioner further concluded that respondent failed to cooperate with the committee. We agree with the commissioner that respondent violated the disciplinary rules and rules of professional conduct in all three matters as set forth in the four specifications of misconduct above.
DISCIPLINE
Having found respondent guilty of misconduct, we must consider whether disciplinary action is warranted. The purpose of lawyer disciplinary proceedings is not primarily to punish the lawyer but rather to maintain appropriate standards of professional conduct to safeguard the public, to preserve the integrity of the legal profession and to deter other lawyers from engaging in violations of the Code of Professional Responsibility and the Rules of Professional Conduct. The discipline to be imposed depends upon the seriousness of the offense involved and the facts and circumstances of each case. The court will take aggravating and mitigating circumstances into account. Louisiana State Bar Association v. Pasquier, 545 So.2d 1014 (La. 1989).
We agree with the disciplinary board that respondent is guilty of failing to account for funds in the Sevin matter, neglect of five matters involving five clients, failure to refund advance deposits in three matters and a failure to cooperate with the committee. Respondent is presently suspended from the practice of law for three years for the mishandling of a client’s funds, failing to account for the funds and neglect of a legal matter in Louisiana State Bar Association v. Amberg, 553 So.2d 448 (La.1989).[10] Respondent’s con *1099 duct in the five matters resulting in the present disciplinary violations occurred from about 1983 until 1987, approximately the same time or shortly after the conduct resulting in the prior disciplinary action of respondent. Thus, there appears to be a pattern of general neglect of respondent’s professional matters during this period of time.
Respondent explained that during the time that the professional misconduct occurred he was overwhelmed by personal problems including a divorce, the loss of his house in the divorce proceedings, and an attempt by his ex-wife to commit suicide. During this period of time he was forced out of his law office in Harahan and then moved to an office in Kenner which burned down forcing him to move in with another attorney. Many of his files were destroyed or misplaced as a result of the fire. He stated that he was too wrapped up in his own personal affairs to reply to the calls of his clients or to the bar association communications, and, in any event, he knew that he would be appearing before the committee and could explain or reply to the complaints at that time. A totality of the circumstances reflects a pattern of general neglect of respondent’s legal matters during the period of time when his personal affairs were in disarray.
We find that respondent’s cumulative misconduct in the five matters to be of sufficient gravity to warrant disciplinary action. If respondent’s misconduct had been considered at the time of the prior disciplinary proceeding, we do not believe that disbarment would have been warranted. Nor do we find that respondent should be disbarred at this time. Rather, we consider a further suspension from the practice of law for a period of six months to be the appropriate penalty. Additionally, respondent must furnish proof that the outstanding medical bills ($2,068.43) in the Sevin matter have been paid and that he has returned $350 to Mrs. Betz, $265 to Fleet Finance and $110 to Mrs. Donaldson before he will be considered for reinstatement.
DECREE
It is ordered, adjudged and decreed that Joseph B. Amberg, Jr. be suspended from the practice of law in Louisiana for six months to run consecutively with the three year suspension presently being served by him in the matter of Louisiana State Bar Association v. Joseph B. Amberg, Jr., 553 So.2d 448 (La.1990). Additionally, respondent must furnish proof that the outstanding medical bills ($2,068.43) in the Sevin matter have been paid and that he has returned $350 to Mrs. Betz, $265 to Fleet Finance and $110 to Mrs. Donaldson before he will be considered for reinstatement. Respondent is to bear all costs of these proceedings.

. 88-B-1310 (No. 8452) was filed on May 24, 1988. 89-B-0421 (Nos. 8647, 8825 and 8727) and 89-B-0422 (No. 9101) were both filed on February 20, 1989.

. The Disciplinary Board of the Louisiana State Bar Association replaced the Committee on Professional Responsibility effective April 1, 1990.

. On January 1, 1987, the Rules of Professional Conduct became effective and replaced the Code of Professional Responsibility. Respondent's alleged misconduct occurred both before and after January 1, 1987. Therefore, both the new rules and old disciplinary rules apply in this proceeding.

. The amount of attorney fees that respondent deducted, 118,321.55, is one-third of the gross settlement after deducting medical expenses.

. Both the commissioner and the disciplinary council failed to deduct $337 in medical expenses paid to Dr. Fortenbery on August 8, 1986, as evidenced by the canceled check presented by respondent at the commissioner’s hearing. The remaining unpaid medical expenses are $801.58 to Dr. Llewelyn, $185 to Dr. Sanchez, $625 to Anesthesia East, and $456.85 to Methodist Hospital for a total of $2,068.43.

.Respondent's trust account statements show that by November 1, 1985, the balance in his trust account was $9,960.85, and by the end of January it was $8,128.33, while the amount owed in outstanding medical expenses was $11,-419.38.

. While we do not believe that respondent intentionally commingled and converted the settlement funds to his own use, because his trust account did not reflect a sufficient amount to cover the outstanding medical expenses in regard to the Sevin matter, we do find a violation of DR 9-102(A), (B).

. On January 1, 1987, the Rules of Professional Conduct became effective and replaced the Code of Professional Responsibility. Respondent’s alleged misconduct occurred both before and after January 1, 1987. Therefore, both the new rules and old disciplinary rules apply in this proceeding.

. On January 1, 1987, the Rules of Professional Conduct became effective and replaced the Code of Professional Responsibility. Respondent’s alleged misconduct occurred both before and after January 1, 1987. Therefore, both the new rules and old disciplinary rules apply in this proceeding.

. In this prior disciplinary proceeding, respondent settled his client’s auto accident claim in December of 1983 for |2000 and according to an agreement with his client, he was to send the net proceeds of $925 of the settlement directly to Claver Federal Credit Union to apply to his client’s car payment. Instead, respondent deposited the sum in his trust account and failed tó forward the net proceeds to the credit union. As a result, a default judgment was obtained by the credit union against respondent’s client. Six months after a complaint was filed with the bar association, respondent sent the settlement check to the credit union. The effective date of respondent’s suspension was December 11, 1989. His readmission in the matter is condi *1099 tioned upon his proof of moral fitness to practice, satisfactory reparation of his client’s damage, and payment of all costs of the proceedings.